Good morning, and may it please the court. My name is Ben Gould, and I'm here representing the appellant. There's a threshold issue of appellate jurisdiction here, but because the recent decision in Berger v. Home Depot settles that issue definitively, I will move on to the striking of the clock, unless the court has it. Well, it may have settled in your mind, but there was a slightly different procedure used in Berger than it was here. In Berger, after the ruling on class certification against the plaintiff, I suppose the plaintiff then only had his own cause of action, which was less than $75,000, and diversity was obviously not available to him. So rather than wait for a motion to dismiss for lack of jurisdiction, he stipulated with the defendant that there was no jurisdiction. Okay? Here, that's not exactly what happened. Here, the plaintiff entered Rule 41, voluntary dismissal with prejudice. And when I read that, I thought, okay, voluntary dismissal with prejudice, where's the case of controversy? After that, he's got no case, right? Well, actually, Your Honor, I would direct the court's attention to the Oregon Bureau of Labor and Industries case, which is cited in the briefs, which actually addresses that issue head on. And it holds quite squarely that mootness, which I take it is what Your Honor is getting at, is not actually an issue, because the voluntary dismissal still leaves what is effectively a controversy because we are still seeking relief here. We are seeking the ‑‑ I'm not interested in concepts of mootness. I'm interested in the concept that there's an affirmative defense to any further action in the voluntary dismissal by the plaintiff of his action with prejudice. Okay. That is an adjudication on the merits. Right? Yes. So he's saying I'm voluntarily dismissing with prejudice. Right. And I guess ‑‑ Therefore, I don't have a case any longer. And I guess I just have trouble seeing how that distinguishes this case from Berger because there it was also a voluntary ‑‑ It was a stipulated dismissal because it would be obvious that if the defendant brought an action to dismiss for lack of jurisdiction, he would win. So rather than cause the court expense and cause somebody else some expense, there's a technical difference between the two. I'm sorry. You see them as the same. Right? I do, but I guess I'm just trying to understand what the court sees as ‑‑ See, a stipulated dismissal can be on the basis that I don't think under the present law I have a cause of action, but I want to appeal that. Right? But a voluntary dismissal with prejudice is I agree, I don't have a cause of action, and I won't bring it again. That's a dismissal with prejudice. Well, but here there actually was a stipulated dismissal under 41. You have the same procedural setting as Berger. Precisely the same, I think. All right. I'll check it. Okay. Don't take any more time on that. Okay. Just on that, of course. Of course. How is this different than the situation where a district court grants a motion to dismiss, but gives the plaintiff the opportunity to amend to address the deficiency, and the plaintiff says, I'm not going to amend. I want to stand on my complaint. Is that different? Yes, I think, Your Honor, because if I'm understanding Your Honor's hypothetical correctly, in that case. It's not a hypothetical. It's WMX Technologies, an in-bank decision of this court. Okay. And did the parties in that case stipulate to a voluntary dismissal? What the plaintiff said was, I understand I have the opportunity to amend, and that you think, Judge, that I can address the deficiency in an amendment. I don't want to do that. I want to stand on the complaint and have that addressed by the circuit. And I apologize, Your Honor, I'm not familiar with the case. I don't believe it was cited in any of the parties' briefs, and that's probably why. But did the court decide that it had jurisdiction over that appeal? Okay. Well, I. . . You agree with it, right? Naturally. Naturally, Your Honor. Yeah. Again, if the court doesn't have any more jurisdictional questions, I will. . . I'm happy to move along. So there are several different independent grounds on which the district court may be reversed. And I just want to talk about what I think is the simplest one. So the district court adopted a standard of comity, under which it had to adhere to the earlier class certification decision unless there had been an intervening change in the law. Well, even if Wolin, which is the case that we rely on, isn't on all fours with this case, and we think it is, but even if it's not, it certainly represents an intervening change in the law. And that's clear just simply because of the gymnastics that Microsoft ably, but has to perform in order to simply try to distinguish that case. And we think unsuccessfully, but this is not something they would have had to do before the Wolin decision. So even if one accepts the district court's comity standard, and we think for the reasons stated in our briefs that it was erroneous, but even if one accepts it, I think that the district court lacked a basis to adhere to the earlier decision. So that's one basis on which to reverse the district court. But there are others. I mean, the most important one is it comes from Wolin itself. You know, and we've talked about that in our briefs probably ad nauseum, and I don't want to waste the court's time on that. I just simply want to point this out, which is just that, you know, in the months since our briefing was completed, the Sixth and the Seventh Circuits have come down with these cases that we cite in our 28-J letters to the court where the court was confronted with moldy washing machines, or rather, actually much more importantly, a design defect that had the propensity to cause moldy washing machines. And the defendants in those cases, much like Microsoft here, said, look, court, you can't certify this case because not all of the washing machines have manifested moldiness. And, you know, there are individual issues of consumer misuse or differences in consumer use. And the court said no. If you're relying, what you're focusing on is the existence of the defect itself, which has the propensity to cause this manifestation of the defect, then those individual issues fall away. And perhaps, you know, even more clearly than the Sixth and Seventh Circuit cases, I would direct the court's attention to another case we cite, I believe, in both of our briefs, but certainly in our reply brief, and it's called Tate v. BSH Home Appliances, and it's out of the Central District of California. This court denied 23-F review of it. I'm not saying it binds this court. I'm just saying I think it's very illuminating. This court denied 23-F review, and then the Supreme Court, in turn, denied certiorari. And the court there on, gosh, what is it? I think it's 479 of the opinion. I point that out because the opinion is very long. But what the court says there is exactly the same dispositive point here, which is just that, you know, because our claims are based not on the disc scratches themselves, but on the fact that the console had this uniform design defect that created a propensity to scratch the discs. The circumstances of any one individual scratch discs doesn't have to be determined. That individual issue doesn't have to be determined to dispose of the claim. Unless this court has any further questions, I'll save the rest of my time. So to take an analogy from yesterday's Wall Street Journal or the day before, in the GM ignition case, if you had a class that said the ignition was defective, it wouldn't defeat class certification because some people's cars didn't crash, didn't produce injury, didn't produce any problem at all, but consists of people saying, I don't want a defective ignition in my car. Correct. If the claim is, look, Ford, he didn't tell me about this thing. I paid more for this car than it was worth because of this defect. Because who knows? I mean, it may not have happened yet, but it very well may happen in the future. But you're not asking for damages for the depreciated value of the Xboxes. I realize that that's what Microsoft says. Are you? Yes or no. Absolutely we are. We are asking for bargain of the benefit damages. You're asking for all boxes to be replaced, aren't you? You're not saying I paid $300 for the Xbox. It has a defect which works in 1% of the cases. The defendants say it only works to cause damage if it's jiggled. But the reputational damage to the Xbox is such that my Xbox, which was worth $300 when I bought it, is worth $150. I want $150. You're not saying that. No, we are. I mean, I don't think. You are. What we're asking for is at least what's at issue in this appeal is the difference between the Xbox as warranted, which is to say a defect-free Xbox, and the Xbox as it actually is, which contains this uniform design defect and is therefore worth less because it has this uniform and omnipresent propensity to cause disc scratches. So if Microsoft had come forward at the get-go and said, we'll resolve this case on the following basis. Anybody who has one of these Xboxes with this claimed below industry standard optical drive, bring it in. We'll replace it with a good one. That would not have satisfied your clients. I think actually if that was what Microsoft were willing to do, I think that would solve the problem. Because, you know, you would be getting what you bargained for. You know, that's not the relief we're asking for. But I think that if Microsoft. You want more than what I just described. No, Your Honor. We want the monetary equivalent. You want a different fashion of the thing. Yeah. I think that's the best way of putting it. We want the monetary equivalent of that in the sense that we want the money damages representing the difference between what we got and what we would get if Microsoft were willing to do that. What is the difference between a defective Xbox and a non-defective Xbox in dollars? That remains to be proven at trial. Do you have any allegation in your complaint that it's 50 percent or 10 percent or 100 percent? No, Your Honor, but I don't believe that. I didn't say it was required. I just asked if there was an allegation. Okay. We don't have an allegation that is that specific. No, Your Honor. We don't try to quantify as of yet the exact amount by which the Xbox is worth less. But you don't have to do that at the class certification stage. Agreed. Agreed. Unless this Court has any other questions, I'll save the rest of my time. All right. Thank you very much. May it please the Court. I'm Steve Rumage, and I'm appearing this morning on behalf of the defendant, Microsoft Corporation. And I think it's important to start by setting the stage of what it is that's really going on here. Because, of course, as Mr. Gould just acknowledged to the Court, and as they acknowledge in their papers, what they're trying to do at this juncture, this proceeding, is certify a class of 50 million Xbox console owners. Fifty million. They realize, after having lost this issue twice, that they can't get certification of a class of people who actually had scratch disks. And so now what they're doing is they're asking for certification of a class that consists largely of people who have used their Xbox without incident, without any scratch disks, and, more importantly, in conformity with the warranty, which is a contract. And we'll get to the terms of the warranty in a moment. So they're trying to expand this group well beyond those people who actually claim economic injury. And what I want to spend my time on this morning is, first of all, I want to talk about why Judge Martinez and Judge Trunauer were absolutely right when they said that the claims under this warranty, which is probably different, Your Honor, from the warranty that GM offers on their ignition locks, but the claims under this warranty raise individual issues of causation. And then I want to speak briefly to the jurisdictional issue, because while certainly Berger bears on it, I believe there are still some open issues after Berger, and I believe that if we follow the route that Mr. Gould and his colleagues have advocated, it's long-term going to be a bad thing for the administration of justice in this circuit. Counsel, could you also address why the Wolin case doesn't undermine Judge Trunauer and Judge Martinez's rationale? I'll actually start there, if that's what Your Honor is interested in, because I want to talk about what you're interested in, not what I'm interested in. So let's talk about Wolin. The one lesson that I think is really important to take away from Wolin is that it's absolutely contrary to what plaintiffs say, because the lesson they try to draw from it is, if we say defect, and we say defect is common across the class, we get a class. But we know that's not what this court did in Wolin, because there were two warranties at issue in Wolin, and so there were two express warranty claims. And the court said, you get a class on one, which is the class pertinent to the vehicle, which said, we promise you, if you have a defective Land Rover, we will fix it. Uses the word defect. The second warranty said... But how is that different from the allegations here, where the plaintiffs are alleging a defect? Because, Your Honor, the word defect does not appear in the warranty here. An express warranty claim is a breach of contract claim. The warranty is quoted at Excerpt of Record 544. Here's what it says. But could I, just so I can follow your argument. Yes. Are you saying that any time there is a warranty, there can never be a viable defect? No, no, no. You're absolutely opposite. What Wolin teaches us is sometimes there are warranty claims based on defects that are common, and sometimes there aren't. We already knew that in this circuit. Because if you go back to N. Ray Dalcon Shield in 1982, express warranty claim, product defect claim, this court said no certification. Zinsser v. Acufix, express warranty, common defect claim, this court said no class certification. What's different about Wolin? The terms of the warranty. So, and the reason that that matters is that the whole point of a class certification procedure is to look at what the claim is and see what kind of proof you need to establish the claim and determine whether that's individual or common. Okay, so let me, just so I can follow your argument. Are you saying that in this case there is no provision in the warranty that covers a defect? Is that what you're saying? Let me read here. The answer is I'm saying that it covers a defect if it affects your play. Here's exactly what you're saying. So you're saying that the warranty only covers defects on a case-by-case basis and does not cover systemic defect. I'm trying to figure out what your argument is, what distinction you're making. The distinction I'm making is this. Let me put it in very practical terms. Let's say I owned an Xbox 360 and it's outside the record, but I did. And let's say I played that Xbox 360 for three years and had no problem. I do not have a claim under the contract warranty under, no matter whether there was an internal defect that I never saw. Here's why, Your Honor. This is what the warranty says. Remember, Roland teaches us, pay attention to what the warranty says and what you have to prove to prove a breach. Microsoft warrants to you that during the warranty period, which is one year and one year only, and under normal use and service, the Xbox console will substantially conform to the printed user instruction materials packaged with the console. But don't you get to that point down the road when you are litigating the liability of the company as opposed to if there is a defect that goes across the board? I get your point, Your Honor. Okay. And I understand your point. And the answer to that is not under this warranty. And that's exactly what Roland teaches us. What about implied warranty? That's an excellent question, Your Honor. Two issues on the implied warranty. First of all, the implied warranty of merchantability is something that varies from state to state. And we address that in our brief. We address that at page 28 of our brief, Manfoot Note 5. And so they could not get a nationwide class on an implied warranty of merchantability. That is settled law in this circuit. Furthermore, under the implied warranty of merchantability in those states where they do have plaintiffs, they would need to show the same thing that they need to show under this express warranty, which is causation and damage. And what's interesting about that in particular, Judge Hawkins, is that after we said that in the opposition brief, the word implied and the word merchantability does not appear in the reply brief. There was no mention of it in the reply brief whatsoever. And I think if you look at this Court's decision in Birdsong v. Apple, you see why. Because Birdsong v. Apple is a very similar situation to this, where the Court confronted a situation where the product was alleged to have a common defect, just like Your Honor says. It was alleged to be in violation of the warranty, just like Your Honor says, Judge Rawlinson. And yet this Court said you don't even have standing. Why? Because you haven't suffered any injury or loss. Which case is that you're talking about? Birdsong v. Apple. And that's not a motion to dismiss. What if Apple sold a CPU, let's call it a Mac computer, desktop, and a purchaser discovered that it had a below industry standard optical drive and sought class certification based on that, that Apple had sold a CPU with a below standard optical drive, and that's the defect? I would say that, Your Honor, I would have to know more. And the reason I would have to know more is this. I would have to know what did Apple promise them, okay, what's in the warranty, because remember the warranty is a breach of contract case. So what's the contract say? Let's say Apple advertised that this is state of the art. Well, that's potentially a consumer deception claim. So that's an advertising claim that's distinct from a warranty claim. But let's say, Your Honor, said that the warranty said, we promise you that the warranty will cover any shortcomings in the product. You may have a breach of warranty claim there. But that's not what this warranty says. And to get back to what Your Honor said a moment ago, and I don't mean to move away from Judge Hawkins' question, but I think it segues back to something that Judge Robinson said a few minutes ago, which is that, you know, when you look at it, when you look at the warranty, it's not just the terms of the warranty. You have to figure out what does somebody need to show to claim under the warranty. In the Wolin case, the Wolin case involved a situation where there was a tire warranty that said we'll replace tires that wear unevenly because of a defect. Remember, the court found a common defect, okay. But the court didn't say, well, we'll find later, later when we get to liability, we'll determine whether, in fact, there's been some breach of the warranty. What the court said is under this warranty, you're going to need to show individual causation. So Judge Nelson, Judge Nelson, who, you know, looks, I would say, is not necessarily regarded as a particularly anti-class action judge. Judge Nelson said, look, because of that, because that's embedded in here, you have to have individual questions. They're likely to predominate, and on remand, that is exactly what happened. What is particularly important here, Your Honors, is also the fact that when you look at the Microsoft warranty, it makes reference to the user instruction materials, right. It says the console will do what your materials say it will do. And so, again, if I have that Xbox 360 and I experience no problems, I have no claim. And I also have to look at what the user instruction materials say. Counsel, could we go back to the language in Walden? I'm looking at pages 1172 and 1173 of that case. And at 1172, Head Note 4, the panel said, Appellants easily satisfy the commonality requirement. The claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model. Then page 1173, the second paragraph, we said, we have held that proof of the manifestation of a defect is not a prerequisite to class certification. Absolutely right. And Judge Martinez specifically said that's absolutely right. And he said, but to say it's not a prerequisite is not the same thing as saying you just get every warranty claim certified. So let's go to 1174, Your Honor. And you will find at 1174, you will find the second full paragraph on that page begins with the words of Land Rover's other warranty. Are you with me? Yep. It says Land Rover's other warranty, the tire warranty, provides that when tire wear is caused by a defect in the vehicles, Land Rover will replace the tires and or pay for realignment. Claims for breach of the tire warranty do not easily satisfy the predominance test. A determination whether the defective alignment caused a given class member's tire to wear prematurely requires proof specific to that individual litigant. So what does that teach us? That teaches us that the facts matter. You're analogizing the tire wear to the disc scratch. Not, sort of, Your Honor, but it's a little bit more, it's more nuanced than that. And the reason I say that is that if that's all I were doing, then the plaintiffs would get up here and say, well, gee whiz, that would be true if we were claiming for the scratch disc class and we acknowledge we can't get a class, we're claiming for the console owner's class. But it's not the class. It's not the injury. It's the warranty. It's the promise they claim is being breached. From the section of the ruling that Judge Rawlinson was just reading from, you know, that talks about a particular warranty. And I'm going to quote. This actually comes from much earlier in the opinion at the bottom of page 1170. It says, This warranty covered repairs required to correct defects in factory supplied materials or factory workmanship with the exception of tires. There was no comparable language. Your point is because that warranty contained language expressly addressing defects, that's what gave the court the. Exactly right, Your Honor. And so, you know, what happened in Woolen was, you know, it's a situation where Land Rover admits it's got a problem, right, admits that there's virtually a defect. It has its people start making repairs, but it doesn't pay for them in full. And so Judge Nelson looks at that and says, well, that's nutty. That's a common question as to whether they should be paying for those repairs that they acknowledge should be paid in full. Here we've got a situation where this is the most popular gaming console on the planet. Nobody is claiming that people don't want this thing. They want it desperately. And there is no allegation. To be honest with you, Your Honor, this isn't even a defect case, but that will go to the merits. But the reality is there is nothing to indicate here that most people or even a substantial percentage of people have problems with their Xbox. And that means that their Xbox is conforming to the user instruction materials, which, by the way, warn several junctures, and indeed on something that on the face of the product, don't move this thing when there is a disc spinning in the console. So the user instruction manuals say don't do the very thing, the very thing that even plaintiff's expert eventually said, yeah, you've got to have movement. You've got to have not only movement, you've got to have movement of a particular kind, and it has to be movement of a particular kind and a particular speed. All of those things have to happen for the scratching to occur, and they're all what is warned against in the user instruction manuals, the user instruction materials that are the touchstone of the warning. And it's interesting. We've been going on this case since 2007, and never once have the plaintiffs said, here's the part of the user instruction manual that we're going to prove you breached. Because they can't. And the focus, indeed, in the trial court was principally on the scratched disk glass, which they've now completely abandoned on appeal. So, Your Honors, I would submit that on the merits, Judge Martinez got it right, Judge Kuhnhauer got it right. I want to pause briefly and talk about jurisdiction for the last minute that I have, if that's okay with the Court, unless Your Honors have other questions on the merits of the class certification decisions reached by these two district judges. And the reason I'm concerned is that I do realize I'm swimming upstream pretty mightily in response to Berger. But the concern that I have about Berger is that Berger, in fact, did not address the arguments that we're making here, did not cite the cases that we think are most controlling. For example, and I'm not just talking about the opinion, frankly, I'm talking about the briefs that were presented to the panel in that case. I know Your Honor was on that panel. They don't talk about Coopers and Libran. Coopers and Libran versus Lysay is the unanimous decision of the Supreme Court from the 1970s, written by Justice Stevens. You get to the end of that opinion, and, of course, that opinion holds unanimously. You can't have interlocutory review of a class certification denial based on the death knell doctrine. And at the very end, the last sentence is Justice Stevens says, the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering a final decision. And then this Court, a year later, in Huey versus Teledyne, said, followed Coopers and Libran and said you can't just not show up in court and take an involuntary dismissal for lack of prosecution and bring up the denial of class certification. The other side distinguishes. That's not what happened in Berger, though. That is not what happened in Berger. That's exactly right, Your Honor. But it's interesting, when you look at Huey, Huey doesn't draw a distinction between an involuntary dismissal and a voluntary dismissal. And Huey comes from, relies on, a Third Circuit decision called Sullivan. Third Circuit just a few months, a couple of months ago, right before Berger came out, followed Sullivan, the same case that this Court followed in Huey, and said, you know what? 23F is now the avenue for review. And this case was denied 23F review after Judge Martinez's decision. Indeed, it was denied 23F review after Judge Kuhnhauer's decision. And we believe that is the appropriate avenue. If the plaintiff here has followed precisely the route which the plaintiff did in Berger, right, and which Mr. Gould says they did, in fact, we will be bound to find jurisdiction. Would we not, as a three-judge panel? I would, you know, to be honest with you, Your Honor, because of Huey and because of Coopers, I'm not sure. Well, we can't very well say that the Berger panel was wrong. I understand that. There are procedural differences. Step back a second and answer this question for me. What is the difference between the plaintiff's actions in Berger? And the actions here? And the actions here. I see a difference in that in Berger there was a stipulation to a dismissal because a motion to dismiss for lack of diversity because the individual plaintiffs did not have $75,000 in damages was imminent. Why come to court? Why file papers? You know you're going to lose, so he dismisses. Here there's a voluntary dismissal under 41A. Is that a substantive determinative difference? The short answer is I'm not sure that is, but there is another procedural difference between the two cases, which is that in Berger there was no Rule 23-F petition filed. In this case, there was a 23-F petition filed. Two judges of this court, including Judge Hawkins, denied the 23-F petition. Then it went back to the district court, and then they entered it. So you say the procedure used here is simply an end run around a dismissal of the 23-F? I don't think there's any question about that. And when you look at Coopers and Librand versus Lysay where Justice Stevens says, you know, one of the problems with this interlocutory order based on the death knell doctrine, they're saying the death knell doctrine turned into death, and that's why they get reviewed. And one of the things that Justice Stevens says is, you know, that's not fair. In the last case, I don't know if you were here, we interpreted a petition for Coram Novus as being a petition for Mandamus. Right? Right. And nobody seemed to be upset about that. Why don't we interpret what the plaintiff did here as what the plaintiff did in Berger and get rid of this issue? Well, because I don't think it does get rid of this issue. One of the problems is that sets up a square inter-circuit conflict with the Third Circuit because the Third Circuit has said exactly the opposite, and I think it's contrary to this court's prior ruling in Huey and the Supreme Court's decision in Coopers and Librand, which I think is that last sentence of Justice Stevens is just unequivocal. What is the difference between what the plaintiff did in Berger and what the plaintiff did here? What I just said, Your Honor, which is the 23-F petition. Is that the only difference? I think substantively that's the only difference. But I do think that part of the problem is that Home Depot did not argue to the panel in Berger the same arguments that we've argued here. And, you know, how that plays out in terms of the court following the prior panel decision, I can't answer that in terms of Ninth Circuit procedure. But I can say that we do think the case is incompatible with Coopers and Librand, incompatible with Huey, and in conflict with the Third Circuit and Kamesi. All right. Thank you, counsel. Thank you, Your Honor. I apologize for going over. We'll file a rebuttal. Microsoft is arguing that there's not a breach of the warranty because the express warranty doesn't cover defects. Okay. Fine. I don't agree with that. But that's not a class certification issue. That's a merits issue. And it's a merits issue because if Mr. Rumage is right, if he's right that that's what the express warranty covers, then that's true for everybody in our proposed class. It goes up or it goes down. But it goes up or it goes down as a class. So that's just wrong. Well, Wolin did address the fact that the warranty covered defects. Do you think that was just background information? You don't think that was important to the decision? It was understanding what the nature of the claim was and what kind of evidence you had to put forward to prove it. And also, I mean, I think we need to be clear. Which warranty are we talking about? Are we talking about the tire warranty? I mean, the Wolin court made an express distinction between the tire warranty and the car warranty. Agreed. Agreed. But in contrast to Mr. Rumage, I don't think that what the court was focusing on was what the warranty itself covered. Rather, what the court was focusing on was what the nature of the claim was and what you had to show to prove it. In the limited warranty claim, what the plaintiffs there were saying was, all we have to show is that there is this inherent geometric design defect. That's all we have to show. It doesn't matter whether it's manifested or not. That's precisely the case here. Now, maybe we're wrong. Maybe that doesn't breach the warranty. But, again, that's a determination that applies to the whole class. Your opponent argues, if I heard him correctly, that on an implied warranty theory you can't get a nationwide class. What's your response? My response to that is twofold. First of all, this is an argument that Microsoft makes conclusory in a footnote, and I don't know how to respond to it because it's not in any way, you know, put in anything other than a conclusory form. The second thing is, to the extent they point the thing to a case like MAZA, which does point to differences of law in order to deny class certification, that's a case about different consumer protection statutes rather than the UCC, which is what the implied warranty is under. The question whether you have a valid implied warranty claim is a question of state laws. Correct. Correct. And the law may differ from state to state. The law may differ, I agree. I don't think it does, but the fact is, is that Microsoft hasn't pointed to any differences in the law, nor, frankly, did the court below, nor did Judge Kuhnhauer, insofar as the implied warranty claim was concerned. Well, my time is up, and I really appreciate the time. Well, I just had one question before you finalize. On the finality issue, opposing counsel made the distinction that there was no 23F petition, or the 23F petition was denied. So do you think that makes a difference in terms of us applying Berger? I don't, and I'll tell you why. The problem with that is this. Berger makes clear that there are two requirements for appealability under 1291. First is adverseness, and the second is finality. Here we have adverseness because it was a, because just as in Berger, it was a stipulation to dismissal with the expectation that we will challenge this otherwise interlocutory ruling, this striking of the class certification. I don't know how an earlier unsuccessful seeking of a 23F appeal affects that, nor do I understand how that could possibly affect finality. How does — Would you do me a favor — Of course. — and assign the record citation to the stipulation for dismissal? Certainly. Not the motion for voluntary dismissal as I always conceived of it, but the actual stipulation. It is ER1 and ER2. Thank you very much. I appreciate the time you've given us. Thank you. Thank you to both counsel. The request as argued is submitted for decision by the court. That completes our calendar for this morning. We are on recess until 9 a.m. tomorrow morning.
judges: Hawkins, Rawlinson, Bea